IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01186-PAB-NRN

W. ROBERT WARDELL,

Plaintiff,

v.

AMERICAN DAIRY GOAT ASSOCIATION,

Defendant.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT AMERICAN DAIRY GOAT ASSOCIATION'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE
(Dkt. #59)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #60) issued by Chief Judge Philip A. Brimmer referring Defendant American Dairy Goat Association's (the "ADGA" or "Defendant") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Dkt. #59.) The Court granted leave for Plaintiff W. Robert Wardell to conduct limited jurisdictional discovery. (*See* Dkt. #42.) Mr. Wardell responded to the Motion (Dkt. #74) and Defendant replied. (Dkt. #76.) The Court heard oral argument on the Motion on November 30, 2021. (*See* Dkt. #81.) The Court ordered the ADGA to produce certain additional documents to Mr. Wardell and permitted Mr. Wardell to file a supplemental response. (*Id.*) Mr. Wardell submitted his supplemental response on December 14, 2021 (Dkt. #81) and the ADGA submitted a supplemental reply on December 21, 2021. (Dkt. #83.)

The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court hereby **RECOMMENDS** that motion be **DENIED** but that the matter be **TRANSFERRED** to the United States District Court for the District of North Carolina.

## BACKGROUND

This case arises from the ADGA's refusal to renew Mr. Wardell's membership in the organization. According to its website, the ADGA is a non-profit corporation created to "collect, record and preserve the pedigrees of dairy goats and to provide genetic, management, and related services to dairy goat breeders." *About Us*, Am. Dairy Goat Assoc., https://adga.org/about-us/ (last visited February 3, 2022). According to Mr. Wardell, "the ADGA is the sole entity in the United States for the registration and/or recordation of the pedigrees of American dairy goats" and by registering animals with the ADGA, the value of the animals (and thus of a dairy goat breeder's business) is significantly increased. (Dkt. #16 at ¶ 18.) Mr. Wardell states that an ADGA registration is the "gold standard in dairy goat registrations" and that the ADGA offers performance programs, such as linear appraisal, not offered by any other registry. (*Id.*)

Mr. Wardell filed his Third Amended Complaint[1] ("TAC") on May 5, 2021. (Dkt. #16.) The TAC named the ADGA and several individuals, in both their individual and official capacities: Lance Gerlach, Kennon D. Feaster-Eychison, Thomas Peter

---

[1] The text entry for Dkt. #16 names this document the Third Amended Complaint. Indeed, it appears it was the third amendment Mr. Wardell filed (Dkt. ##14, 15, and 16) after the original pleading. (Dkt. #1.) However, the document itself is titled "Second Amended Complaint." In the interest of clarity and to avoid confusion, the Court will refer to the operative complaint, Dkt. #16, as the Third Amended Complaint despite how Mr. Wardell titled it.

Considine, Kristina S. Bozzo-Baldenegro, Lynn Benedict, Melissa O'Rourke, Robin M. Saum, and Shirley McKenzie. (*Id.*)

In the summer of 1995, Ms. McKenzie placed a hold on Mr. Wardell's ADGA account for blood typing fees and, despite efforts to correct the issue, the hold remains in place. (*Id.* at ¶ 26.) Mr. Wardell previously filed suit against the ADGA[2] and, before the ultimate outcome of the case, the ADGA "purported to revoke [his] membership permanently" without giving him any prior notice or an opportunity to be heard. (*Id.* at ¶¶ 30–33.) He alleges that the ADGA failed to follow their own rules concerning the revocation. Further, the ADGA has refused to allow Mr. Wardell to "register or transfer American and/or purebred dairy goats as a non-member." (*Id.* at ¶ 36.)

Mr. Wardell also generally alleges that "[a]nnouncements were made at shows and conventions that plaintiff was under investigation, in an effort to damage and ruin [his] reputation" and that ADGA members "were urged not to deal with [him]." (*Id.* at ¶ 34(a)–(b).) The ADGA and the individual (now-dismissed) defendants allegedly defamed Mr. Wardell, including by making "statements to the effect that [Mr. Wardell] had defrauded the registry." (*Id.* at ¶ 59.) Mr. Wardell alleges that the ADGA's actions effectively prevent him from conducting his dairy goat business.

Based on this conduct, Counts I and II of the TAC allege the ADGA and individual defendants violated Sections I and II of the Sherman Act, 15 U.S.C. §§ 1, 2. Mr. Wardell also brings claims for tortious interference (Count III), unfair competition under Colo. Rev. Stat. § 10-3-1104 (Count IV), and defamation (Count V). Further, Mr.

---

[2] Mr. Wardell does not describe the basis of this earlier state court lawsuit.

Wardell alleges that he was denied due process when Defendants failed to follow their own constitution and bylaws in declining to renew Mr. Wardell's membership.

Each Defendant filed a separate motion to dismiss challenging the Court's personal jurisdiction over them. (*See* Dkt. ##48, 50, 52, 54, 56–58.) On October 20, 2021, Mr. Wardell requested an order dismissing the individual defendants from this case because he discovered they no longer serve in leadership at the ADGA. (Dkt. #77.) On October 22, 2021, Chief Judge Brimmer entered an Order dismissing all of the individuals from the case under Fed. R. Civ. P. 41 and denied each of their respective motions to dismiss as moot. (Dkt. #80.) Thus, the only remaining defendant in this matter is the ADGA. The ADGA's Motion to Dismiss (Dkt. #59) is the only remaining motion pending before the Court.

With respect to the issues of jurisdiction and venue, the following facts are taken from the TAC and the exhibits submitted with the parties briefing:

1. The ADGA is a "membership dairy goat registry corporation, incorporated under the laws of Missouri, with its principal office and place of business at 161 W. Main St., Spindale, NC 28160." (Dkt. #16 at ¶ 4; *see also* Dkt. #59-1, McKenzie Decl., at ¶ 3.)

2. The ADGA has over 20,000 members nationwide. (Dkt. #59-1 at ¶ 5.) As of March 1, 2021, there were 313 adult and 50 youth members in Colorado. (*Id.* at ¶ 9.)

3. The ADGA sends quarterly newsletters, an annual guidebook, and an annual membership directory to its members. (*Id.* at ¶ 13.)

4. The ADGDA does not send unsolicited mail communications to Colorado residents. (*Id.* at ¶ 14.)

5. ADGA does not have an office, telephone listing, or bank account in Colorado, and does not have any employees in Colorado. (*Id.* at ¶¶ 15–16.)

6. The ADGA does not sell dairy goats except for in association with consignment sales at its National Show or its National Convention. In such

cases, the ADGA is involved in the consignment sale of less than 20 goats per event (*Id.* at ¶ 18.) The ADGA has not been involved in the consignment sale of any dairy goats in Colorado since 2012. (*Id.* at ¶ 19.)

7. The ADGA holds its National Show in a different location each year. Since 2005, it hosted one National Show in Colorado (in 2012). (*Id.* at ¶ 20.)

8. The ADGA holds an Annual Meeting/Convention in a different location each year. Since 2005, it hosted one Annual Meeting/Convention in Colorado (in 2007). (*Id.* at ¶ 21.)

9. In 2021, the ADGA issued approximately 18 permits to test DHIR[3] in Colorado herds. (Dkt. #82-1, Wardell Decl., ¶ 2.)

10. In 2021, there were 14 herds in Colorado that participate in linear appraisal. (*Id.* at ¶ 3.)

11. The ADGA sanctions dairy goat shows nationwide. The ADGA sanctioned six shows in Colorado in 2019 through 2020. (Dkt. #83-2.)

In its Motion, the ADGA argues that Mr. Wardell's TAC must be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction because the ADGA does not have sufficient contacts with Colorado. It also argues for dismissal under Rule 12(b)(3) for improper venue because the ADGA does not "transact business" sufficient to justify venue in this forum within the meaning of the Sherman Act.

For his part, Mr. Wardell contends that the ADGA's contacts with Colorado are sufficient to confer this Court with jurisdiction over the ADGA and that venue is proper. The Court permitted Mr. Wardell to conduct limited discovery concerning the jurisdictional issues. (*See* Dkt. ##42 & 81.)

**LEGAL STANDARDS**

---

[3] DHIR means Dairy Heard Improvement Registry. *See DHIR FAQ's*, Am. Dairy Goat Assoc., https://adga.org/knowledgebase/dhir-faqs/ (last visited Jan. 26, 2022).

## I. Pro Se Litigants

Mr. Wardell proceeds pro se. Accordingly, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Bellmon*, 935 F.2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## II. Venue

Defendant moved to dismiss, in part, based on improper venue pursuant to 12(b)(3). The Court may consider venue prior to considering personal jurisdiction. *See Aspen Corps., Inc. v. Gorman*, No. 18-cv-01325-CMA-SKC, 2019 WL 1281211, at *3 (D. Colo. Mar. 20, 2019) (considering defendants' venue argument first because "[t]here is no mandatory sequencing of jurisdictional issues." (quoting *Sinochem Int'l Co. Ltd v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)). As the Supreme Court explained:

> The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum. On the other

> hand, neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties. Accordingly, when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue.

*Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (internal citations omitted); *see also Aspen Corps.*, 2019 WL 1281211, at *3 (citing *Leroy*, 443 U.S. at 180).

The Court finds it prudent in this matter to consider venue before personal jurisdiction. In light of the Court's conclusion that convenience and interests of justice justify a transfer of the action to the Western District of North Carolina (the district where the ADGA is headquartered), "it is more efficient to begin by simply transferring the litigation to the [proper forum], rather than dismissing it and effectively requiring Plaintiff to re-file" in another forum. *Aspen Corps.*, 2019 WL 1281211, at *3. Because "it is the Court's practice to seek efficient outcomes," the Court finds it "appropriate to pretermit the matter of personal jurisdiction." *Id.* (citation omitted).

## ANALYSIS

This matter should be transferred to the Western District of North Carolina. Though Defendant only requests dismissal and does not mention transfer, if venue is improper in Colorado, the Court is empowered to transfer a matter to a proper venue "if it be in the interest of justice." 28 U.S.C. § 1406. Further, even if venue in this district were proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). For reasons set forth more fully below, the Court recommends transfer pursuant to § 1404(a).

### A. Convenience of the parties and witnesses weigh in favor of transfer.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, (1988)).

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1509 (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)).

The primary factors for consideration in this case are Mr. Wardell's choice of forum and the accessibility of witnesses and other sources of proof. Mr. Wardell's preference for pursuing this action in the District of Colorado weighs against transferring venue. He resides in Colorado and his dairy goat operation is located here. Generally, unless the balance of the inconvenience is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Bailey v. Union Pac. R. Co.*, 364 F. Supp. 2d 1227, 1229 (D. Colo. 2005) (citing *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992)).

Further, inconvenience to the defendant, if significant, weighs in favor of transferring this matter. The ADGA, the only remaining defendant in this matter,

8

Case 1:22-cv-00045-MOC-WCM    Document 85    Filed 02/08/22    Page 8 of 18

is based in North Carolina. The meeting minutes and other records that Mr. Wardell seeks to access are maintained there. According to Mr. Wardell, Shirley McKenzie—the ADGA's Association Manager, Registrar, "titular member of the ADGA Executive Committee," and "member of an ADGA Hearing Committee," and who is responsible for denying him due process—is a resident of North Carolina. (Dkt. #16 at ¶ 5.) Ms. McKenzie confirmed this allegation in her affidavit in support of her motion to dismiss. (*See* Dkt. #56-1.) Though Mr. Wardell has since dismissed his claims against Ms. McKenzie because she no longer serves in leadership at the ADGA, she will likely be an important witness, given the allegations that she placed the initial hold on Mr. Wardell's ADGA account and later sought to revoke his membership. The same can be said of Mr. Gerlach, the former executive director of the ADGA and member of the ADGA Executive Committee. Mr. Wardell alleged, and Mr. Gerlach has confirmed, that he is a resident of North Carolina. (Dkt. #16 at ¶ 6; Dkt. #50-1.)[4] Though it is unclear from the allegations what precise role Mr. Gerlach had in the revocation of Mr. Wardell's membership or in the other conduct alleged, he is likely to be an important witness. Further, because Ms. McKenzie and Mr. Gerlach live in North Carolina, they are unquestionably subject to compulsory process there. In Colorado, Mr. Wardell, proceeding *pro se*, may have difficulty securing the appearance of material witnesses for trial.

    **B.**     **The allegations concerning venue in Colorado are tenuous; but venue is undoubtedly proper in North Carolina.**

---

[4] The remaining former individual defendants reside in a variety of states and their places of residence do not affect the transfer analysis.

Transferring venue is further supported by the Court's finding that Mr. Wardell's allegations of proper venue are tenuous at best. Subject matter jurisdiction for Mr. Wardell's Sherman Act claims is premised on federal question jurisdiction under 28 U.S.C. § 1337. Jurisdiction as to the remaining claims, which all arise under Colorado state law, is premised on supplemental jurisdiction under 28 U.S.C. § 1367. Thus, the Court considers the venue provisions relevant to antitrust actions contained in Section 4 and Section 12 of the Clayton Act, 15 U.S.C. §§ 15, 22. The general federal venue provisions found in 28 U.S.C. § 1391 are also relevant. *See* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3818 at 175 (2d ed. 1986) ("[I]t is now clear beyond any doubt that the general venue statutes apply to antitrust cases.")

### 1. Section 4 of the Clayton Act

Section 4 of the Clayton Act allows suit "in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy." 15 U.S.C. § 15(a). A corporate defendant resides in a district if it is subject personal jurisdiction there. *See* 28 U.S.C. § 1391(c) (defining residence "[f]or all venue purposes"). The ADGA is incorporated in Missouri and has its principal place of business in North Carolina. Further, the ADGA does not have an agent in Colorado. As set forth more fully below, Colorado cannot exercise *general* personal jurisdiction over the ADGA. But the question of whether Colorado may exercise *specific* personal jurisdiction over the ADGA is a difficult one.

### 2. Section 12 of the Clayton Act

Section 12 provides that venue in antitrust cases against a corporation "may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. Though Section 12 does not refer to the residence of a defendant, presumably the broad definition of residence in 28 U.S.C. § 1391(c)(2) applies equally to the word "inhabitant." *See* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3818 at 175 (2d ed. 1986) (collecting cases).

The United States Supreme Court long ago clarified that the phrase "transacts business" in the Clayton Act means: "The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character.'" *United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948). "The propriety of venue turns on the nature of the corporate defendant's business." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 429 (2d Cir. 2005). "Whether a defendant has transacted business is largely a factual question to be determined in each case. In making this determination, courts look for tangible manifestations of doing business." *Caribe Trailer Sys., Inc. v. Puerto Rico Mar. Shipping Auth.*, 475 F. Supp. 711, 716 (D.D.C. 1979), *aff'd*, No. 79-1658, 1980 WL 130478 (D.C. Cir. July 3, 1980).

The Court finds that such manifestations are arguably absent here. The ADGA does not have an office, bank account, telephone listing, or employee or agent in Colorado. *Id.* (finding that venue was improper where "[n]one of the moving parties ha[d] officers, employees, or agents within the district" and "[n]one ha[d] offices or own[ed] property . . . nor d[id] they maintain corporate records, telephones, telephone listings, or

bank accounts"); *see also Daniel*, 428 F.3d at 430–31 (finding that the defendant did not transact business within the meaning of Section 12 of the Clayton Act where it did not lease any real estate, maintain an office, telephone bank account, or mailing address in the district and did not employ any agents in the district); *Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979), *abrogated on other grounds, Union Lab. Life Ins. Co. v. Pireno*, 458 U.S. 119, (1982) (ruling that the defendant did not transact business within a particular district merely because some of its membership (.06%) resided there and it transmitted advertisements and professional materials into the district). Further, "[a] professional association does not 'transact business' in a judicial district merely because some of its members reside in the district and receive the association's publications there." *Friends of Animals, Inc. v. Am. Veterinary Med. Ass'n*, 310 F. Supp. 620, 624 (S.D.N.Y. 1970).

The Court acknowledges that the ADGA's business in Colorado goes beyond simply mailing its newsletters to members in this District. But not significantly so. In addition to sending print materials to its members, the ADGA sanctions—i.e., lends its name to—several shows a year in Colorado. The Show Sanction Application (Dkt. #82-3) indicates that it costs between $40–$120 per show depending on how far in advance of the show the application is submitted. Mr. Wardell argues that the shows for junior does, senior does, and bucks are sanctioned separately, so there is a $40–$120 cost for each application for each type or class of goat shown at the sanctioned show. (Dkt. #82 at 5.) Even if the ADGA sanctioned 3 shows per year in 2019 and 2020 for $40-$120 per class of goat per show, this does not amount to "practical, everyday business" or business of a "substantial character." Nor does hosting its National Convention and

12

Case 1:22-cv-00045-MOC-WCM    Document 85    Filed 02/08/22    Page 12 of 18

National Show in Colorado only once in more than 15 years. Thus, I conclude that venue is not proper under Section 12 of the Clayton Act.

### 3. 28 U.S.C. § 1391

Finally, it appears that Mr. Wardell has not established that the District of Colorado is the proper venue under Section 1391 of the general venue statutes. In relevant part, the federal venue statute provides that a civil action may be brought in (1) the judicial district where the ADGA resides or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b)(1)–(2).

The Court begins with § 1391(b)(2) and finds that Mr. Wardell has not shown that a substantial part of the events giving rise to the claim occurred in this district sufficient to establish venue. The TAC is devoid of any allegations concerning where the meeting at which Defendant revoked Mr. Wardell's membership took place. Instead, the ADGA has shown that the meeting where his membership was revoked took place in Kansas City, Missouri. (Dkt. #76-1.) Mr. Wardell also alleges that "[a]nnouncements were made at shows and conventions that [he] was under investigation, in an effort to damage and ruin [his] reputation" and that ADGA members were "urged not to deal with" him, but he does not allege where these events took place. (Dkt. #16 at ¶ 34(a)–(b).)

Mr. Wardell's only method for establishing venue, then, hinges on a prima facie showing that Defendant resides in Colorado. This means he must show that that the

13
Case 1:22-cv-00045-MOC-WCM    Document 85    Filed 02/08/22    Page 13 of 18

Court may exercise personal jurisdiction over the ADGA. 28 U.S.C. § 1391(b)(1).[5] The Court turns briefly to the question of personal jurisdiction.

### C. There is substantial doubt whether the Court has personal jurisdiction over the ADGA.

#### 1. The Court may not exercise general jurisdiction over the ADGA.

The Court lacks general jurisdiction over the ADGA. General jurisdiction exists when the defendant's contacts with the forum are "'so continuous and systematic as to render [it] essentially at home in the forum State.'" *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada*, 703 F.3d, 488 493 (10th Cir. 2012) (quoting *Goodyear*, 564 U.S. at 919); *see also Shrader v. Biddinger,* 633 F.3d 1235, 1243 (10th Cir. 2011) ("[C]ommercial contacts here must be of a sort that approximate physical presence in the state." (quotations omitted)). Because general jurisdiction is not related to the events giving rise to the suit, this is a "more stringent" minimum contacts analysis. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citations omitted).

To determine whether a corporate defendant may be deemed "at home" in the forum state based on its contacts with the state, the Tenth Circuit considers the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through

---

[5] As previously set forth, the general federal venue statute explains that "for all venue purposes," entities such as the ADGA are deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 457 (10th Cir. 1996) (citations omitted). The ADGA avers that it does not send unsolicited mail to Colorado residents, does not employ any employees in Colorado, and does not maintain an office, telephone number, or bank account in Colorado. (Dkt. #59-1, McKenzie Decl., ¶¶14–16.) Nor does it regularly pay taxes in Colorado. (*Id.* at ¶ 17.) In 2021, only 363 of its more than 20,000 members—less than 2% of its total membership—live in Colorado, and those members pay nominal fees for membership. (*Id.* at ¶¶ 5, 9–11.) Since 2005, the ADGA has held one National Show and one National Convention each in Colorado. (*Id.* at ¶¶ 19–20.)

Mr. Wardell also provided evidence that the ADGA offers linear appraisal in Colorado, but there were only fourteen herds in Colorado in 2021 that used this service. (Dkt. #82-1, Wardell Decl., ¶ 3.)[6] Additionally, Mr. Wardell states that the ADGA issued 18 permits to test DHIR in Colorado herds.[7] (*Id.* at ¶ 2.) The ADGA also sanctioned six shows in Colorado during 2019 and 2020. (Dkt. #83-2.)

These business activities are notable, but not of such volume or so "continuous and systematic" as to render the ADGA at home in this forum. *See Mondragon v. Nosrak LLC*, No. 19-cv-01437-CMA-NRN, 2020 WL 2395641, at *8 (D. Colo. May 11,

---

[6] Mr. Wardell cites to the ADGA Membership Directory, which has not been provided to the Court. Even accepting this allegation and the allegation concerning DHIR testing as true, these contacts are insufficient to establish jurisdiction.

[7] It is not clear whether Mr. Wardell has personal knowledge of this fact or is simply speculating. Mr. Wardell's affidavit states this fact is made "on information and belief." Unlike the information about how many herds are on linear appraisal in Colorado, he does not cite to the ADGA Membership Directory.

2020) ("It should go without saying that the mere 'transaction of business' in a state by a company headquartered elsewhere, without more, cannot form the basis for either general or specific personal jurisdiction."); *see also Leachman Cattle of Colo., LLC v. Am. Simmental Ass'n*, 66 F. Supp. 3d 1327, 1336 (D. Colo. 2014) (holding that non-profit association which had 60 members in Colorado out of 3,870 nationwide and held some of its annual meetings in Colorado for several years was not at home in the state).

### 2. The Court may have specific jurisdiction over the ADGA, but need not rule on the issue to transfer venue under § 1404(a).

"Specific jurisdiction may be exercised where the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Kuenzle*, 102 F.3d at 456 (citation omitted).

As previously noted, lacking any allegations of the existence of diversity jurisdiction, the Court has original subject matter jurisdiction only over the federal causes of action: Mr. Wardell's Sherman Act claims (Counts I and II). The remaining claims are all state law causes of action. Therefore, the Court "must analyze each federal claim separately in order to determine whether sufficient facts have been alleged establishing that the underlying action is based upon or arises out of activities that [the defendant] purposefully directed toward Colorado such that the Court also has personal jurisdiction over the claim." *Leachman Cattle*, 66 F. Supp. 3d at 1337. If Mr. Wardell has sufficiently established the facts related to his Sherman Act claims, the ADGA will be subject to suit in Colorado. "If not, the federal causes of action—and in turn the supplemental state claims—must be dismissed." *Id.*

It is difficult to determine what conduct Mr. Wardell alleges relates to the federal claims so as to determine whether it was directed at Colorado, thus conferring the Court with specific personal jurisdiction over the ADGA.[8] Ultimately, because the Court recommends transfer under 28 U.S.C. § 1404(a) to a venue that unquestionably has personal jurisdiction over the ADGA and is more convenient for the overall litigation, the Court finds it unnecessary to determine whether it may, itself, exercise personal jurisdiction.

## RECOMMENDATION

Because the Western District of North Carolina unquestionably has personal jurisdiction over the Defendant ADGA, and because that District is undoubtedly a proper venue and the interests of justice militate in favor of transfer, this matter should be transferred and not dismissed. Therefore, it is hereby **RECOMMENDED** that the ADGA's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. #59) be **DENIED**. However, it is further **RECOMMENDED** that the matter be **TRANSFERRED** to the Western District of North Carolina.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections**

---

[8] The Court does not consider whether there are sufficient allegations to exercise personal jurisdiction related to the state claw claims because the Court has only been asked to assert supplemental jurisdiction over the state law claims, not original jurisdiction. Thus, "the Court would be using claims over which it has no original jurisdiction to establish personal jurisdiction with respect to claims as to which the Court has original jurisdiction but no personal jurisdiction." *Leachman Cattle*, 66 F. Supp. 3d at 1339.

**within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge**, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), **and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

BY THE COURT

Date: February 8, 2022
      Denver, Colorado

_____
N. Reid Neureiter
United States Magistrate Judge